736 So.2d 263 (1999)
BANK OF WINNFIELD AND TRUST COMPANY, Plaintiff-Appellee,
v.
Earlena COLLINS, Defendant-Appellant.
No. 31,473-WCA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*264 Charles B. Bice, Winnfield, Counsel for Appellant.
Frank R. Whiteley, Metairie, Counsel for Appellee.
Before WILLIAMS and CARAWAY, JJ., and PRICE, J. Pro Tem.
WILLIAMS, Judge.
In this workers' compensation action, the claimant, Earlena Collins, appeals a judgment in favor of the plaintiff, Bank of Winnfield Trust Company, modifying a prior recommendation of the Office of Workers' Compensation (OWC) directing the payment of benefits. The workers' compensation judge found that the claimant was neither temporarily nor permanently totally disabled, but was entitled to supplemental earnings benefits subject to an offset. For the following reasons, we amend and affirm as amended.

FACTS
In December 1985, the claimant injured her lower back while in the course and scope of her employment at the Bank of Winnfield ("the Bank"). Following her injury, the claimant filed a claim for compensation. In July 1986, the OWC recommended that the employer pay the claimant temporary total disability benefits for the period of January 10, 1986 to January 28, 1986, and from February 26, 1986 until she was physically able to return to gainful employment. In response to this recommendation, the Bank, *265 through its workers' compensation carrier, Fidelity & Deposit Company of Maryland ("Fidelity"), paid to claimant temporary total disability benefits of $216.67 per week, based on her average weekly wage of $325.
As a result of her low back injury, claimant underwent lumbar surgery in 1987. Subsequently, the claimant was examined by Dr. Russ Greer. In a March 1990 letter to Fidelity, Dr. Greer wrote that the claimant was disabled for any work activities. In 1991, Fidelity selected Dr. John T. Weiss, an orthopedic surgeon, to conduct an independent medical examination of the claimant. Dr. Weiss continued to treat claimant through the date of the trial. In December 1992, the claimant began receiving monthly Social Security retirement benefits.
In April 1996, the plaintiff, Bank of Winnfield, filed a request for modification of the OWC recommendation on the grounds that the claimant was no longer temporarily totally disabled and was not entitled to any workers' compensation benefits. In the alternative, the Bank of Winnfield sought a credit for social security retirement benefits received by the claimant.
During the hearing on the request for modification, the claimant testified that since 1991, she has been treated exclusively by Dr. John T. Weiss, and that for the past two years her condition has been stable and her treatment has consisted of one appointment every three months for medication management. Dr. Weiss has not recommended any testing or physical therapy. Claimant testified that if she had not been injured, she would only have worked until November 1995, when she had planned to retire. The claimant stated that she did not intend to return to work, even if she were able to do so, because she considers herself retired.
Dr. Weiss, an orthopedic surgeon, testified by deposition and opined that the claimant was disabled from employment because of her pain. Dr. Weiss stated that the claimant's physical exam showed moderate positive straight leg raising, indicating attachment of scar tissue to the nerve root, so that movement would cause some pain. Dr. Weiss testified that the claimant might be able to perform "a job that she could do at home where she could work a little while and sit some and then maybe go lay down a little while and get up and walk again, ... that would be some kind of sedentary thing. So I really think that she's not capable of gainful employment."
The workers' compensation judge rendered judgment finding that the plaintiff proved a change in conditions sufficient to justify modification of the 1986 OWC recommendation, and that the claimant was neither temporarily nor permanently totally disabled. The workers' compensation judge also found that claimant was entitled to supplemental earnings benefits (SEB), payable at a rate of $216.67 for a period of 104 weeks from the date of judicial demand, April 24, 1996, and subject to an offset of $48.84 per week based on the claimant's receipt of social security retirement benefits funded by plaintiff. The claimant appeals the judgment.

DISCUSSION
The claimant contends the workers' compensation judge erred in finding that plaintiff satisfied its burden of proving a change in conditions sufficient to justify modification of the 1986 OWC recommendation. Claimant argues that the record contains clear and convincing medical evidence to prove her permanent and total disability.
The workers' compensation judge retains continuing jurisdiction over each case, including the authority to make such modifications or changes with respect to former findings or orders relating thereto that may be justified. LSA-R.S. 23:1310.8 A. Upon the application of any party in interest, on the grounds of a change in conditions, the workers' compensation judge may review any award and may *266 make an award ending, reducing or increasing the compensation previously awarded. LSA-R.S. 23:1310.8 B.
Workers' compensation benefits are available for an employee who suffers an injury that produces a temporary total disability to engage in any self-employment or occupation for wages. Williams v. Jones Truck Lines, Inc., 27,465 (La. App.2d Cir.11/1/95), 662 So.2d 867. When a satisfactory degree of healing, or a point of maximum medical improvement, is reached, the claimant's condition will be deemed "permanent" and he will no longer be entitled to temporary total disability benefits. Ross v. St. Paul Fire & Marine Insurance Co., 556 So.2d 891 (La.App. 2d Cir.1990).
In his deposition, Dr. Weiss testified that since February 1991, he had seen the claimant regularly for approximately five years and that during this time period her physical condition had remained "essentially unchanged." Dr. Weiss stated that a 1992 MRI did not show nerve root compression and a myelogram did not indicate acute disc herniation. Dr. Weiss testified that additional diagnostic tests were not needed and opined that the conditions causing the claimant's pain are permanent and cannot be changed with surgery.
The evidence shows that as of April 24, 1996, when plaintiff filed a petition for modification, the claimant was no longer in a healing and recovery period. Dr. Weiss' testimony established that claimant's injury had stabilized by that date and was not expected to significantly improve in the future. Consequently, claimant's disability cannot be considered "temporary." Thus, the workers' compensation judge was not clearly wrong in finding that plaintiff had shown a change in conditions and that claimant was no longer entitled to receive temporary total disability benefits.

Permanent Total Disability
The claimant contends the workers' compensation judge erred in finding that she was not permanently and totally disabled. Whenever a claimant is not engaged in any employment, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence that she is physically unable to perform any employment or self-employment, including any odd-lot employment, sheltered employment or employment while working in any pain. LSA-R.S. 23:1221(2). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, or much more probable than its nonexistence. Williams v. Jones Truck Lines, supra.
In the present case, the claimant testified that she has been unemployed since the accident and unable to work because of the continuing pain. Although Dr. Weiss opined that claimant was "permanently disabled" from performing any job, he acknowledged that other than her subjective complaints of pain, there was no physical reason why claimant could not engage in light-duty work activities. In addition, Dr. Weiss testified that claimant would only be able to perform a "sedentary" type of job at home, where she could take frequent breaks, because she was not capable of sitting or standing for any length of time without rest intervals. For this reason, Dr. Weiss was of the opinion that claimant was not capable of "gainful employment" outside of the home.
Following the 1983 amendments to the workers' compensation statute, evidence that an employee could not return to any gainful employment without suffering substantial pain is no longer sufficient to support an award of permanent total disability benefits. Long v. Manville Forest Products Corp., 554 So.2d 181 (La.App. 2d Cir.1989); Perrodin v. St. Landry Parish School Bd., 95-1563 (La.App. 3rd Cir. 5/22/96), 676 So.2d 612. Here, Dr. Weiss testified that the basis of his opinion concerning claimant's permanent disability was her continuing symptom of pain. However, the fact that claimant can only work in substantial pain is not sufficient to *267 support recovery of permanent total disability benefits. On the basis of this record, we cannot say the workers' compensation judge was clearly wrong in finding that the claimant failed to prove by clear and convincing evidence that she was permanently and totally disabled. The assignment of error lacks merit.

Award of SEB
The claimant contends the workers' compensation judge erred in calculating the award of supplemental earnings benefits. Although "working in pain" is no longer a factor in determining permanent total disability, the concept is still considered in the context of supplemental earnings benefits (SEB). Perrodin v. St. Landry Parish, supra. In order to recover SEB, the employee must prove by a preponderance of evidence that she is unable to earn wages equal to 90% or more of her wages at the time of injury. LSA-R.S. 1221(3); Mason v. Auto Convoy, 27,444 (La.App.2d Cir.11/1/95), 662 So.2d 843. To rebut the claimant's proof, the employer must prove that the claimant is physically able to perform work which is reasonably available. LSA-R.S. 1221(3)(c)(i); Davis v. Jones Baldwin Music Co., 27,545 (La. App.2d Cir.11/1/95), 662 So.2d 803.
LSA-R.S. 23:1221(3)(d) provides that the right to SEB shall terminate when the employee retires or begins to receive retirement (old age) insurance benefits under Title II of the Social Security Act. However, the period during which SEB may be payable shall not be less than 104 weeks.
Here, Dr. Weiss testified that claimant would not be able to work without substantial pain and that at most she could perform only a sedentary light-duty job. The plaintiff did not present any evidence that claimant could physically perform an available job. The claimant began receiving Social Security retirement benefits in December 1992. Thus, on this record, the workers' compensation judge was not clearly wrong in awarding 104 weeks of SEB to claimant for the period from April 24, 1996, the date of judicial demand.
The claimant contends the workers' compensation judge erred in finding that the SEB award was subject to an offset in the amount of her Social Security benefits which were funded by the employer. Pursuant to LSA-R.S. 23:1225 C, if an employee receives remuneration from: a) benefits under the Louisiana Workers' Compensation statute, b) retirement (old age) insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, c) benefits under disability plans funded by an employer, and d) any other workers' compensation benefits, then the employee's benefits shall be reduced so that the aggregate remuneration from the listed sources does not exceed 66 2/3% of the employee's average weekly wage at the time of injury. This section effectively authorizes a credit for the employer or insurer against its compensation obligation when the employee receives other enumerated benefits. Cousins v. City of New Orleans, 608 So.2d 978 (La.1992); G.N.B., Inc. v. Jones, 29,779 (La.App.2d Cir.8/20/97), 699 So.2d 466.
In the present case, because the claimant receives both compensation benefits and Social Security retirement payments, Section 1225C limits her combined remuneration from these sources to 66 2/3% of her average weekly wage. The claimant's average weekly wage was $325, and 66 2/3% of that amount is $216.67, the amount of compensation benefits which the claimant had been receiving. Consequently, when the claimant collected Social Security payments in addition to workers' compensation, the total exceeded 66 2/3% of her average weekly wage and the plaintiff was entitled to an offset.
Claimant argues that because the SEB rate is based on average monthly wages, the plaintiff is not entitled to a weekly offset. Section 1221(3) refers to the worker's pre-injury average monthly wage in *268 comparison to the average monthly wages he may subsequently earn in any employment. However, the claimant has not earned post-injury wages and this provision does not apply to her situation. Although claimant's brief cites G.N.B. Inc. v. Jones, supra, that case does not support her argument. In Jones, this court did not allow an offset because the combined total of the employee's compensation and social security disability payments did not exceed 66 2/3% of his average weekly wage. In contrast, as previously noted, the claimant's aggregate remuneration from compensation and social security benefits exceeds 66 2/3% of her average weekly wage. The argument lacks merit.
The workers' compensation judge found that plaintiff was entitled to reduce the claimant's compensation benefit in the amount of $48.84 per week from April 24, 1996, through April 24, 1998. This calculation is based on the claimant's receipt of social security payments of $420 per month. However, as acknowledged by plaintiff, the parties stipulated that for the period of April 1996 to December 1996, the claimant actually received Social Security retirement benefits of only $408 per month. Thus, the offset of $48.84 per week for those months is incorrect.
The letter from the Social Security Administration introduced into evidence shows that the employer and employee share half of the social security taxes. The plaintiff's 50% share of the social security benefits paid during April 1996 to December 1996 is $204 per month. As a result, the plaintiff is entitled to a weekly offset of $47.44 for that nine-month period. Thus, the claimant's adjusted SEB rate should be $169.23 per week for the period of April 1996 through December 1996. The weekly SEB rate of $167.83, as provided in the judgment, is applicable as of January 1997. Consequently, the judgment must be amended to reflect this correction. The plaintiff must also apply the corrected amount in its calculation of the credit for any overpayments of benefits.

CONCLUSION
For the foregoing reasons, the workers' compensation judge's order granting an offset is amended to establish the weekly offset amount at $47.44 for the period of April 1996 through December 1996. The judgment in all other respects is affirmed. Costs of this appeal are assessed to the appellant, Earlena Collins.
AMENDED AND AFFIRMED AS AMENDED.